UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AGILYSYS, INC. | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEN HALL AND | ) | JURY TRIAL DEMANDED |
| SOLUTIONS II, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Agilysys, Inc. ("Plaintiff" or "Agilysys"), by and through its undersigned attorneys, files this Complaint for Injunctive Relief and Damages against Defendants Ken Hall ("Hall") and Solutions II, Inc. ("Solutions II") (collectively "Defendants").

## PRELIMINARY STATEMENT

This case involves Defendants Ken Hall and Solutions II's theft of Agilysys's corporate trade secrets and related proprietary and confidential information for their financial gain, in violation of Hall's non-disclosure obligations. Agilysys employed Hall for thirty-two (32) years, most recently as a Major Account Executive. During his employment, Hall specifically solicited sales on behalf of Agilysys and was the sole employee responsible for its iSeries

and IBM hardware sales. Hall was, in fact, an IBM sales specialist for Agilysys and received incentive compensation based upon his sales performance and completion of company objectives. In his position as a Major Account Executive, Hall had control over, had access to, and gained extensive knowledge of, Agilysys's sales force, marketing programs, sales strategies, customer acquisition methods, sales figures, pricing information, existing contracts, and customer lists.

In light of Hall's access to Agilysys's proprietary business information, Hall executed a Non-Disclosure Policy and Agreement (the "Non-Disclosure Agreement") which prohibited the disclosure and use of Agilysys's technical information and business information for the benefit of himself or any other person, firm, or corporation. The Non-Disclosure Agreement was necessary to protect Agilysys's competitive standing in the marketplace and preserve Agilysys's interest in its confidential, proprietary and trade secret information. Hall also agreed to abide by Agilysys's Code of Business Conduct (the "Code of Conduct") which prohibits employees from engaging in activities that could create a conflict with the employee's duty of loyalty to Agilysys or disclosing Agilysys's confidential and proprietary information. Finally, Hall agreed to comply with Agilysys's Business Computing Policy and Guidelines (the "Business Computing Policy") which authorizes employees to use Agilysys's email, computer systems, and other computing resources for business purposes only.

Notwithstanding the terms of the Non-Disclosure Agreement, the Code of Conduct, and the Business Computing Policy, Hall misappropriated Agilysys's trade secret information by using it on behalf of technology solutions company, Solutions II. On or about March 31, 2016, Hall resigned his employment with Agilysys and informed Agilysys that he would be assuming a sales position with Solutions II. Agilysys has discovered that for at least two weeks prior to his resignation, Hall had been accessing Agilysys's computer systems and e-mailing himself project proposals and templates containing and related to Agilysys's confidential customer relationships and prospective customer relationships.

Upon discovery of Hall's illicit conduct, Agilysys sent Hall a letter reminding him of his confidentiality obligations under the Non-Disclosure Agreement and the Code of Conduct and demanding that Hall return any of Agilysys's trade secret, confidential, and proprietary information. Hall has refused to do so. Upon information and belief, Hall and Solutions II continue to be in possession and use of Agilysys's trade secret and confidential information and has used this unlawfully acquired information to interfere with Agilysys's contractual and business relationships with its customers.

In addition to its unlawful misappropriation of Agilysys's confidential, trade secret, and proprietary information through its relationship with Ken Hall, Solutions II has also tortiously interfered with Agilysys's contractual and business

relationships by employing Agilysys's business consultants, Pamela Eversole ("Eversole") and Robert LaPorte ("LaPorte"). As independent consultants for Agilysys, Eversole and LaPorte had access to Agilysys's confidential information for the sole purpose of pursuing business opportunities on behalf of Agilysys. Under the terms of the Consulting Services Agreement, a true and correct copy of which is attached hereto as **Exhibit A**, Eversole and LaPorte agreed to not use Agilysys's confidential information or information gained in the course of their work for Agilysys when performing services for third parties. Despite the terms of this Agreement and despite being aware of Eversole's and LaPorte's obligations to Agilysys, Solutions II has unlawfully interfered with the relationship between Agilysys and its consultants which has resulted in irreparable damage and loss of existing and prospective customers. Accordingly, Agilysys brings this action to enjoin and seek redress for illegal conduct and corporate espionage by Defendants Hall and Solutions II.

## THE PARTIES

1.    Agilysys is a leading technology company that provides innovative point-of-sale, property management, inventory and procurement, workforce management, analytics, document management and mobile and wireless solutions and services to the hospitality industry. The company's solutions and services allow property managers to better connect, interact and transact with their

customers by streamlining operations, improving efficiency, increasing guest recruitment and wallet share, and enhancing the guest experience. Agilysys serves four major market sectors: Gaming, both corporate and tribal; Hotels, Resorts and Cruise; Foodservice Management; and Restaurants, Universities, and Healthcare. Agilysys also provides contract support, maintenance and subscription services. Agilysys is a business incorporated under the laws of the state of Ohio with its principal office in Alpharetta, Georgia.

2.    Hall was formerly a Major Account Executive with Agilysys. Upon information and belief, Hall has accepted a sales position with Solutions II, Inc. a direct competitor. Hall resides at 11955 Chaffin Road, Roswell, Georgia 30075.

3.    Solutions II, Inc. is a Colorado corporation. Solutions II is a technology company that provides information and network security and business operation solutions. Solutions II has its principal place of business at 8822 South Ridgeline Boulevard, Suite 205, Littleton, Colorado 80129.

<u>**JURISDICTION AND VENUE**</u>

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this Action arises under the laws of the United States, and specifically, 18 U.S.C. § 1833 and 18 U.S.C. § 1030. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct giving rise to the claims alleged herein occurred in this District and because at least one of the Defendants resides within this District.

6.     This Court has personal jurisdiction over Hall who resides in the State of Georgia.

7.     This Court has personal jurisdiction over Solutions II pursuant to O.C.G.A. § 9-10-91 because it transacts business in Georgia, has committed a tortious act or injury within the state of Georgia, and/or has committed a tortious injury in the state of Georgia caused by an act or omission outside the state of Georgia.

## FACTS

8.     Hall commenced employment with Agilysys approximately thirty-two years ago and served in the position of Major Account Executive at the time of his resignation from Agilysys in March 2016.

9.     As a Major Account Executive, Hall was primarily responsible for Agilysys's profits and losses, top line sales, gross margin, and all direct costs of his assigned business line as the IBM and iSeries Sales Specialist. This included responsibility over Agilysys's sales, customer service, logistics and distribution management, and inventory with respect to his business line.

10.    As an IBM Sales Specialist at Agilysys, Hall was the sole employee responsible for selling IBM hardware and technology solutions used with Agilysys's technology solutions.

11.    All other sales employees sold Agilysys's own technology solutions and non-IBM hardware and technology solutions used with Agilysys's solutions.

12.    As a result of Hall's unique position as an IBM Sales Specialist, Hall could contact any prospective customers or existing customers for potential sales.

13.    All other employees were assigned to specific sales territories or assigned specific sales accounts.

14.    In performing his duties at Agilysys, Hall had access to Agilysys's valuable trade secrets and confidential, proprietary and/or non-public information related to Agilysys's business, sales force, operations, software, applications and systems, services, product development, customer lists, contract lists, price lists, sales lead sheets, and strategies for customer retention, acquisition and growth.

15.    All of this information is unique to Agilysys and derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

16. As a part of Hall's employment with Agilysys, Hall was offered and issued a company laptop for the purpose of fulfilling his job responsibilities on behalf of Agilysys.

17. As a condition of and in consideration of his continued employment, Hall executed a Non-Disclosure Policy and Agreement ("Non-Disclosure Agreement") on or about February 18, 2004. A true and correct copy of the Non-Disclosure Agreement is attached hereto as **Exhibit B**.

18. Pursuant to the Non-Disclosure Agreement, Hall agreed that he would not directly or indirectly disclose or make any use of any trade secret or confidential information for the benefit of himself or any other person, firm, corporation, or association, either during his/her employment or at any time following his/her termination, for any reason whatsoever.

19. Under the Non-Disclosure Agreement, Agilysys's trade secret, confidential, and proprietary information includes but is not limited to customer lists, information regarding account assignments, technological or related information of products or services of Agilysys, business contacts and relationships, and information related to Agilysys's responses to solicitation for jobs.

20.     Hall further agreed to return any documents, items, and copies related to Agilysys's confidential and trade secret information after the termination of his employment.  Hall has refused to do so.

21.     Breach or threatened breach of Hall's obligation under the Non-Disclosure Agreement, entitles Agilysys to an injunction restraining the use and disclosure of Agilysys's confidential information and restraining Hall from engaging in conduct in default of his obligations under the Non-Disclosure Agreement.

22.     In addition to the terms set forth in Hall's Non-Disclosure Agreement, Hall was bound by the policies and terms set forth in the Agilysys Code of Conduct.  A true and correct copy of the Code of Conduct is attached hereto as **Exhibit C**.

23.     Pursuant to Agilysys policy, Hall reviewed the Agilysys Code of Conduct and affirmed his commitment to abide by the terms therein.

24.     Agilysys's Code Conduct provides that "all employees . . . have a duty to act in the best interest of the Company," and that employees "should avoid any activities or relationships that create a conflict or an apparent conflict with that duty."

25.     Agilysys's Code of Conduct also prohibits the use of company resources, including all "computer access and capabilities [computer systems,

including all hardware, data, software, and networks associated with these computers]" for anything other than business purposes.

26.    Hall also agreed to abide by the terms of Agilysys's Business Computing Policy each time he accessed Agilysys's computing systems, resources, and intranet.  Agilysys's Business Computing Policy is attached hereto as **Exhibit D**.

27.    The Business Computing Policy requires that Agilysys computer systems and email only be used for conducting Agilysys's business or for purposes authorized by Agilysys management

28.    The Business Computing Policy further provides that personal use of Agilysys's computing resources is not authorized if it interferes or competes with Agilysys business, involves any incremental cost to Agilysys, or is in direct conflict with other Agilysys policies.

29.    Access to Agilysys's computing resources is only provided to those employees with an identified business need.

30.    Agilysys employees are not authorized to access Agilysys's computing resources for non-business purposes.

31.    Agilysys's confidentiality provisions in the Non-Disclosure Agreement and the Code of Conduct are examples of the specific and reasonable

measures that Agilysys takes to protect the confidentiality of its trade secret, proprietary, and confidential business information.

32.     Agilysys also requires that employees utilize badges to access its facilities, passwords to access its computer systems, employs security time-outs on computers, segregates confidential information, and places locks on offices, doors and file cabinets.

### *Hall's Unlawful Conduct*

33.     Just days prior to his separation from Agilysys, Hall began emailing Agilysys's trade secret, confidential, and proprietary information from his Agilysys email account to his personal email account.

34.     Such information included Agilysys proposals for prospective customers and templates for proposals used to garner previous customer relationships.

35.     Hall forwarded information regarding customers' preferences, requests for proposal, requests for contract renewals and prior Agilysys orders and contracts from his Agilysys email account to his personal email account on March 29, 30, and 31, 2016.

36.     On March 31, 2016 at 4:39 P.M., Hall emailed his supervisor Darren Student to inform him that he was resigning from Agilysys immediately.

37.     However, even after resigning from Agilysys, Hall sent confidential customer information regarding client software and hardware systems from his Agilysys email account to his personal email account on March 31, 2016 at 4:54 P.M.

38.     Upon Hall's separation, Agilysys received messages from customers addressed to Hall's Agilysys email account regarding proposals sent by Hall after his resignation from Agilysys.

39.     Hall emailed Agilysys's trade secret, confidential, and proprietary information to himself notwithstanding the explicit provisions of the Non-Disclosure Agreement, the Code of Conduct, and the Business Computing Policy.

40.     Upon information and belief, Hall has stated and continues to state to Agilysys's existing and prospective customers that Agilysys is no longer in the business of selling iSeries and IBM hardware and solutions.

41.     As Agilysys's former IBM Sales Specialist, Hall has personal knowledge that his representation that Agilysys is no longer in the business of selling iSeries and IBM hardware and solutions is untrue.

42.     As a result of Hall's defamatory statements and misrepresentations to Agilysys's existing and prospective customers, Agilysys has lost sales and profits.

43.     While still employed with Agilysys, Hall accepted a sales position with Solutions II.

44.     Solutions II directly competes with Agilysys.

45.     Upon information and belief, Hall has exploited his position with Agilysys to misappropriate Agilysys's trade secret, confidential, and proprietary information for his benefit and the benefit of Solutions II.

46.     Hall and Solutions II have solicited and will continue to solicit Agilysys's existing customers to generate and conduct business on behalf of Solutions II.

47.     On or about March 31, 2016, Hall informed Agilysys that he would be resigning his position as a Major Account Executive effective immediately.

48.     On or about June 15, 2016, Agilysys sent Hall a letter reminding him of his non-disclosure obligations under the Non-Disclosure Agreement and Code of Conduct.

49.     Hall's actions on behalf of himself and of Solutions II violate the Non-Disclosure Agreement, the Code of Conduct, the Business Computing Policy, and other policies governing the use of Agilysys's email, computer systems and resources.

50.     As a result of Hall's and Solutions II's unlawful and unjustified, wrongful conduct, Agilysys has been damaged by the loss of its financial competitive edge arising from the disclosure of its confidential, proprietary and trade secret information.

51.     As a result of Hall's and Solutions II's unlawful and unjustified conduct, Agilysys has been damaged by the loss of its customers.

52.     Agilysys has been harmed and continues to suffer irreparable harm as a consequence of Hall's and Solutions II's unlawful actions.

53.     Based on the foregoing wrongful conduct by Hall and Solutions II, which was knowing, willful, intentional, reckless and/or grossly negligent, Agilysys is entitled to an award of compensatory damages, punitive damages, and injunctive relief.

### *Hall and Solutions II's Unlawful Interference with Agilysys's Business Consultants*

54.     In addition to its unlawful misappropriation of Agilysys's confidential, trade secret, and proprietary information through its relationship with Ken Hall, Hall and Solutions II have also tortiously interfered with Agilysys's contractual and business relationships by employing Agilysys's business consultants, Pamela Eversole ("Eversole") and Robert LaPorte ("LaPorte").

55.     As business consultants for Agilysys, Eversole and LaPorte had access to Agilysys's confidential information for the sole purpose of pursuing business opportunities on behalf of Agilysys.  Under the terms of the Consulting Services Agreement, Eversole and LaPorte agreed to not use Agilysys's confidential information or information gained in the course of their work for Agilysys when performing services for third parties.

56. Despite the terms of this Agreement and despite being aware of Eversole's and LaPorte's obligations to Agilysys, Hall and Solutions II have unlawfully interfered with the relationship between Agilysys and its consultants which has resulted in irreparable damage and loss of existing and prospective customers.

57. As a result of Hall and Solutions II's unlawful and unjustified, wrongful conduct, Agilysys has been damaged by the loss of its financial competitive edge arising from the use of its confidential, proprietary and trade secret information obtained from Agilysys's business consultants.

58. As a result of Solutions II's unlawful and unjustified conduct, Agilysys has been damaged by the loss of its customers and loss of the benefit of new business opportunities pursued by its business consultants.

59. Agilysys has been harmed and continues to suffer irreparable harm as a consequence of Solutions II's unlawful actions.

60. Based on the foregoing wrongful conduct by Hall and Solutions II, which was knowing, willful, intentional, reckless and/or grossly negligent, Agilysys is entitled to an award of compensatory damages, punitive damages, and injunctive relief.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### *(Against Defendants)*

61.     Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

62.     Hall knowingly and/or with intent to defraud Agilysys, accessed or used Agilysys's computer systems without authorization and/or in excess of his authorization to obtain information from a protected computer used in interstate commerce.

63.     Hall's knowing and willful use of Agilysys's computer systems for non-business purposes constituted unauthorized access of Agilysys's computer systems and computing resources in violation of the Business Computing Policy and other Agilysys policies governing the use of such resources.

64.     Solutions II directly, or indirectly, induced and/or directed Hall to access Agilysys's protected computer systems without authorization and/or in excess of his authorization to obtain Agilysys's confidential information in violation of the Non-Disclosure Agreement, the Code of Conduct, the Business Computing Policy, Agilysys's other policies, and the fiduciary duties and duty of loyalty that Hall owed to Agilysys.

65.     Solutions II and Hall conspired to improperly access Agilysys's protected computer systems without authorization and/or in access of Hall's authorization to obtain Agilysys's confidential information in violation of

Agilysys's computer access policies and other business policies described in this complaint.

66. Solutions II, through Hall, furthered the intended wrongdoing by improperly accessing, obtaining, and utilizing valuable information from protected computers for unauthorized purposes in violation of Agilysys's computer access policies and other business policies described in this complaint.

67. The information Defendants obtained from the above-alleged acts and conduct included valuable information relating to Agilysys's business operations, including, but not limited to, proposal, pricing, and scope of work information for its existing and prospective customers. This critical information is extremely valuable to Agilysys and allows Solutions II to unlawfully compete against Agilysys.

68. On information and belief, Hall and Solutions II benefitted from Hall's unauthorized access and use of Agilysys's protected computer systems.

69. As a direct and proximate result of the above-alleged wrongful conduct, Agilysys has expended in excess of $5,000 in computer analysis and analytics and will suffer great and irreparable harm.

70. Agilysys has suffered further damages including the expenses associated with forensic examination of its computer systems, losses from

assessing violations of its computer systems by Defendants, expenses associated with conducting a damage assessment, and other consequential damages.

71.    As a result, Agilysys is suffering and will continue to suffer immediate and irreparable harm. Agilysys lacks an adequate remedy at law and, unless enjoined by this Court, Defendants will continue to cause irreparable injury and damage to Agilysys as a result of their illegal acts.

72.    Agilysys is likely to succeed on the merits of its claims against Defendants. Agilysys is without adequate remedy at law for the injuries it continues to sustain resulting from Defendants' acts and conduct.

73.    Wherefore, Agilysys demands that the Court enter judgment against Defendants:

    a. Temporarily and permanently enjoining Defendants as set forth in 18 U.S.C. § 1030(g) from using or disclosing information and/or data obtained from Agilysys through unauthorized access to and/or exceeding the user's authority to access Agilysys's computer systems in violation of the Computer Fraud and Abuse Act;

    b. Requiring Defendants to immediately return all correspondence, files, customer information, plans, price lists, sales lead sheets, and other Agilysys property to Agilysys, including any information accessed by Hall;

c.  Awarding Agilysys damages as set forth in 18 U.S.C. § 1030(g), including but not limited to, its costs and reasonable attorney's fees incurred in this action;

d.  Awarding Agilysys such other and further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE DEFEND TRADE SECRETS ACT
### *(Against Defendants)*

74.    Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

75.    As a result of his employment and position of trust with Agilysys, Hall was given access to Agilysys's valuable trade secrets, including but not limited to, price lists, sales lead sheets, customer lists, bidding proposal methodology, past purchase information, and proposal templates.    These documents and information are unique to Agilysys and are not commonly known or available to the public.

76.    Agilysys takes reasonable steps to protect the secrecy of its confidential, proprietary and trade secret information. Agilysys's reasonable steps include but are not limited to, distributing Agilysys's Non-Disclosure Agreement, Code of Conduct, and Business Computing Policy which require all employees to maintain the confidentiality of proprietary and trade secret business information;

restrict employee access to proprietary and trade secret information to employees with a legitimate business need to know such information; enforce disciplinary action against employees for improper disclosure of proprietary and trade secret information.

77. Agilysys's trade secrets relate to products and/or services used in, or intended for use in, interstate or foreign commerce.

78. Notwithstanding Agilysys's efforts to maintain the confidentiality of its trade secrets, upon information and belief, Hall as an agent for Solutions II misappropriated Agilysys's valuable trade secrets used in, or intended for use in, interstate or foreign commerce for the benefit of Solutions II.

79. Hall and Solutions II disclosed and utilized Agilysys's customer information, customer proposals, and other trade secret and proprietary information for the unlawful economic benefit of Solutions II to the detriment of Agilysys.

80. Hall and Solutions II knew and/or had reason to know that the disclosures and utilization were illegal and violated Agilysys's Non-Disclosure Agreement, Code of Conduct, and business policies identified in this complaint.

81. The information misappropriated by Hall and Solutions II derives independent economic value from not being generally known within the industry to Agilysys's competitors who could obtain economic benefit from disclosure, use,

and replication of key information that contributes to and secures Agilysys's competitive edge in the market place.

82.     The information misappropriated by Hall and Solutions II constitute trade secrets under the Defendant Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

83.     Hall and Solutions II's misappropriation of Agilysys's trade secrets gave and continues to give Hall and solutions II an unfair and unjust advantage in the operation of a competing business.

84.     The use and disclosure, and even threatened use and disclosure of Agilysys's trade secrets by Hall and Solutions II entitles Agilysys to immediate injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3).

85.     At all material times, Hall and Solutions II have acted willfully, maliciously, and in bad faith.

86.     Agilysys has suffered and will continue to suffer irreparable harm as a result of Hall's and Solutions II's misappropriation.

87.     Wherefore, Agilysys demands that the Court enter judgment against Hall and Solutions II:

a.  Enjoining Hall and Solutions II, pursuant to 18 U.S.C. § 1836(b)(3)(A), from using or disclosing Agilysys's trade secret information for the benefit of Solutions II or otherwise;

b.  Requiring Hall and Solutions II to return all customer lists, pricing schedules, bidding proposal methodology, customer purchasing history, proposal templates, and any other proprietary information belonging to Agilysys in their custody or control;

c.  Issuing an ex-parte order providing for the seizure of all Agilysys's trade secret information and other of Defendants' property necessary to prevent the propagation or dissemination of Agilysys's trade secret information pursuant to 18 U.S.C. § 1836(b)(2)(A).

d.  Awarding Agilysys damages as set forth in 18 U.S.C. § 1836(b)(3)(B);

e.  Awarding Agilysys such other and further relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF THE GEORGIA COMPUTER SYSTEMS PROTECTION ACT
### *(Against Defendants)*

88.  Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

89.  Hall knowingly used or accessed Agilysys's computer systems without authorization and/or in excess of his authorization to take or appropriate Agilysys's property or to convert Agilysys's property to his own use in violation of

Agilysys's Non-Disclosure Agreement, Code of Conduct, Business Computing Policy and other business policies governing the use of such resources.

90.     Hall's knowing and willful use of Agilysys's computer systems for non-business purposes constituted unauthorized access of Agilysys's computer systems and computing resources in violation of the Business Computing Policy and other Agilysys policies governing the use of such resources.

91.     Solutions II, through Hall, furthered the intended wrongdoing by improperly accessing, obtaining, and utilizing valuable information from protected computers for unauthorized purposes in violation of Agilysys's computer access policies and the fiduciary duties Hall owed to Agilysys.

92.     The information Defendants obtained from the above-alleged acts and conduct included valuable information relating to Agilysys's business operations, including, but not limited to, confidential information regarding price lists, sales lead sheets, customer lists, bidding proposal methodology, past purchase information, and proposal templates.   This critical information is extremely valuable to Agilysys and allows Solutions II to unlawfully compete against Agilysys.   On information and belief, Hall and Solutions II benefitted from Hall's unauthorized access and use of Agilysys's protected computer systems.

93.     As a direct and proximate result of the above-alleged wrongful conduct, Agilysys has been damaged and will suffer great and irreparable harm.

94.     Agilysys has suffered further damages including the expenses associated with forensic examination of its computer systems, losses from assessing violations of its computer systems by Defendants, expenses associated with conducting a damage assessment, and other consequential damages.

95.     As a result, Agilysys is suffering and will continue to suffer immediate and irreparable harm. Agilysys lacks an adequate remedy at law and, unless enjoined by this Court, Defendants will continue to cause irreparable injury and damage to Agilysys as a result of their illegal acts.

96.     Agilysys is likely to succeed on the merits of its claims against Defendants. Agilysys is without adequate remedy at law for the injuries it continues to sustain resulting from Defendants' acts and conduct.

97.     Wherefore, Agilysys demands that the Court enter judgment against Defendants:

    a.  Temporarily and permanently enjoining Defendants from using or disclosing information and/or data obtained from Agilysys through unauthorized access to and/or exceeding the user's authority to access Agilysys's computer systems in violation of the Georgia Computer Systems Protection Act;

b. Requiring Defendants to immediately return all correspondence, files, customer information, and other Agilysys property to Agilysys, including any information accessed by Hall;

c. Awarding Agilysys damages as set forth in O.C.G.A. § 16-9-93(g), including but not limited to, its costs and reasonable attorney's fees incurred in this action;

d. Awarding Agilysys such other and further relief as the Court deems just and proper.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS PURSUANT TO GEORGIA TRADE SECRETS ACT**
*(Against Defendants)*

98. Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

99. As a result of his employment and position of trust with Agilysys, Hall was given access to Agilysys's valuable trade secrets, including but not limited to, price lists, sales lead sheets, customer lists, bidding proposal methodology, past purchase information, and proposal templates. These documents and information are unique to Agilysys and are not commonly known or available to the public.

100. Agilysys takes reasonable steps to protect the secrecy of its confidential, proprietary and trade secret information. Agilysys's reasonable steps

include but are not limited to, distributing Agilysys's Non-Disclosure Agreement and Code of Conduct which require all employees to maintain the confidentiality of proprietary and trade secret business information; restrict employee access to proprietary and trade secret information to employees with a legitimate business need to know such information; enforce disciplinary action against employees for improper disclosure of proprietary and trade secret information.

101. Notwithstanding Agilysys's efforts to maintain the confidentiality of its trade secrets, upon information and belief, Hall misappropriated Agilysys's valuable business for the benefit of Solutions II.

102. Hall and Solutions II utilized Agilysys's customer information, customer proposals, and other trade secret and proprietary information for the unlawful benefit of Solutions II to the detriment of Agilysys.

103. Hall and Solutions II knew the disclosures and utilization were illegal and violated Agilysys's policies and the Non-Disclosure Agreement.

104. The information misappropriated by Solutions II and Hall derives independent economic value from not being generally known within the industry to Agilysys's competitors who could obtain economic benefit from disclosure, use, and replication of key information that contributes to and secures Agilysys's competitive edge in the market place.

105. The information misappropriated by Hall and Solutions II constitute trade secrets under the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq*.

106. Hall's and Solutions II's misappropriation of Agilysys's trade secrets gave and continues to give Hall and Solutions II an unfair and unjust advantage in the operation of a competing business.

107. The use and disclosure, and even threatened use and disclosure of Agilysys's trade secrets by Hall and Solutions II entitle Agilysys to immediate injunctive relief and damages, pursuant to O.C.G.A. § 10-1-762.

108. At all material times, Hall and Solutions II have acted willfully, maliciously, and in bad faith.

109. Agilysys has suffered and will continue to suffer irreparable harm as a result of Hall's and Solutions II's misappropriation.

110. Wherefore, Agilysys demands that the Court enter judgment against Hall and Solutions II:

    a. Enjoining Hall and Solutions II, pursuant to O.C.G.A. § 10-1-762, from using or disclosing Agilysys's trade secret information for the benefit of Solutions II or otherwise;

    b. Requiring Hall and Solutions II to return all customer information, purchasing history, proposal templates and any other proprietary information belonging to Agilysys in their custody or control;

c. Awarding Agilysys damages as set forth in O.C.G.A. § 10-1-763;

d. Awarding Agilysys attorneys' fees as set forth in O.C.G.A. § 10-1-764; and

e. Awarding Agilysys such other and further relief as the Court deems just and proper.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE**
*(Against Defendants)*

111. Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

112. Upon information and belief, Solutions II and Hall solicited one or more of Agilysys's existing customers with the intent to cause such customers to cease or materially reduce their business relationships with Agilysys, in favor of securing products and/or services from Solutions II.

113. Upon information and belief, Solutions II and Hall solicited one or more of Agilysys's potential customers, based on proprietary business information provided to Solutions II by Hall regarding Agilysys's customers, with the intent of procuring such customers on behalf of Solutions II.

114. Upon information and belief, Solutions II and Hall solicited one or more of Agilysys's existing customers by falsely stating that Agilysys was no longer in the business of selling IBM or iSeries hardware and solutions, with the

intent to cause such customers to cease or materially reduce their business relationships with Agilysys, in favor of securing products and/or services from Solutions II.

115.  Upon information and belief, Solutions II and Hall solicited one or more of Agilysys's potential customers by falsely stating that Agilysys was no longer in the business of selling IBM or iSeries hardware and solutions, with the intent of procuring such customers on behalf of Solutions II.

116.  Upon information and belief, consequent to Defendants' interference, Agilysys has already been damaged and expects further damage.

117.  When Solutions II and Hall, on behalf of Solutions II, solicited Agilysys's existing customers, they had knowledge of the relationship between Agilysys and its existing customer base.

118.  When Solutions II and Hall, on behalf of Solutions II, solicited Agilysys's existing and potential customers, they had knowledge of Agilysys's expectation of economic benefit from the procurement of additional customers and business.

119.  But for Solutions II's and Hall's intentional and unlawful interference, Agilysys would have received the economic benefit of its continued relationship with its existing customers because non-renewal of Agilysys product orders is very rare.

120. But for Solutions II's and Hall's intentional and unlawful interference, Agilysys would have gained the economic benefit of renewal or additional orders from existing customers and the acquisition of new customers seeking Agilysys's products and/or services.

121. Solutions II's and Hall's wrongful conduct was knowing, willful, intentional, malicious, reckless or grossly negligent.

122. Agilysys has suffered and will continue to suffer immediate and irreparable harm as a result of Solutions II's and Hall's conduct.

123. Agilysys has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

124. Wherefore, Agilysys demands that the Court enter judgment against the Defendants:

a. Temporarily and permanently enjoining Solutions II and Hall from tortiously interfering with Agilysys's prospective business relationships and existing contracts with its customers;

b. Requiring Solutions II and Hall to provide Agilysys with a full accounting of the profits obtained from their wrongful conduct;

c. Requiring Solutions II and Hall to pay compensatory and punitive damages to Agilysys in an amount to be fixed at trial, together with interest;

d. Awarding Agilysys its costs and attorneys' fees incurred in connection with this action; and

e. Awarding Agilysys such other and further relief as the Court deems just and proper.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE
### *(Against Solutions II)*

125.   Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

126.   Upon information ad belief, Solutions II solicited one or more of Agilysys's business consultants, including Pamela Eversole ("Eversole") and Robert LaPorte ("LaPorte"), with the intent to cause such consultants to cease or materially reduce their business relationships with Agilysys and pursuit of business opportunities on behalf of Agilysys, in favor of securing employment with Solutions II and pursuing business opportunities on behalf of Solutions II.

127.   Upon information and belief, Solutions II solicited one or more of Agilysys's customers and potential customers, based on proprietary business information provided to Solutions II by Agilysys's independent consultants, including Eversole and LaPorte, with the intent to cause such customers and potential customers to cease or materially reduce their business relationships with Agilysys, in favor of securing products and/or services from Solutions II.

128. Upon information and belief, consequent to Solutions II's interference, Agilysys has already been damaged and expects further damage.

129. When Solutions II solicited Agilysys's business consultants, Solutions II had knowledge of the relationship between Agilysys and its business consultants.

130. When Solutions II through Agilysys's business consultants, solicited Agilysys's existing and potential customers, Solutions II had knowledge of Agilysys's expectation of economic benefit from the procurement of additional customers and business.

131. But for Solutions II's intentional and unlawful interference, Agilysys would have received the economic benefit of its continued relationship with its business consultants.

132. But for Solutions II's intentional and unlawful interference, Agilysys would have gained the economic benefit of new business opportunities acquired through its business consultants, including Eversole and LaPorte.

133. But for Solutions II's intentional and unlawful interference, Agilysys would have received the economic benefit of its continued relationship with its existing customers because non-renewal of Agilysys product orders is very rare.

134. But for Solutions II's intentional and unlawful interference, Agilysys would have gained the economic benefit of renewal or additional orders from

existing customers and the acquisition of new customers seeking Agilysys's products and/or services.

135. Solutions II's wrongful conduct was knowing, willful, intentional, malicious, reckless or grossly negligent.

136. Agilysys has suffered and will continue to suffer immediate and irreparable harm as a result of Solutions II's conduct.

137. Agilysys has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

138. Wherefore, Agilysys demands that the Court enter judgment against Solutions II:

   a. Temporarily and permanently enjoining Solutions II from tortiously interfering with Agilysys's prospective business relationships and existing contracts with its customers;

   b. Temporarily and permanently enjoining Solutions II from tortiously interfering with Agilysys's relationships with its business consultants, including Eversole and LaPorte;

   c. Requiring Solutions II provide Agilysys with a full accounting of the profits obtained from its wrongful conduct;

   d. Requiring Solutions II to pay compensatory and punitive damages to Agilysys in an amount to be fixed at trial, together with interest;

e. Awarding Agilysys its costs and attorneys' fees incurred in connection with this action; and

f. Awarding Agilysys such other and further relief as the Court deems just and proper.

## COUNT VII
## BREACH OF FIDUCIARY DUTY
### *(Against Hall)*

139. Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

140. During his employment with Agilysys, Hall had authority to solicit business on behalf of Agilysys, and as such owed Agilysys a fiduciary duty not to act contrary to Agilysys's interests, which included, but was not limited to, a duty to avoid competition with Agilysys and refrain from disclosing or using Agilysys's trade secrets, confidential, and proprietary information.

141. Hall breached his fiduciary duty by, *inter alia*:

a. Disclosing and using Agilysys's trade secret, confidential and proprietary information to Solutions II during and after his employment with Agilysys;

b. Wrongfully disclosing and misappropriating Agilysys's confidential, proprietary, and trade secret information for the benefit of Solutions II;

c. Soliciting Agilysys's existing customers for the benefit of Solutions II;

d. Soliciting Agilysys's potential target customers for the benefit of Solutions II; and

e. Other illegal acts designed to unfairly compete with Agilysys.

142. As a direct and proximate result of Hall's willful breach of his fiduciary duty to Agilysys, Agilysys has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by Hall, lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

143. Based on the foregoing wrongful conduct by Hall, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Hall breached his fiduciary duty and Agilysys is entitled to disgorgement of any compensation paid to Hall as well as an award of punitive damages.

144. Wherefore, Agilysys demands that the Court enter judgment against the Defendants:

a. Requiring Hall to pay compensatory and punitive damages to Agilysys in an amount to be fixed at trial, together with interest;

b. Requiring Hall to disgorge all wages, including commissions, paid by Agilysys after Hall's disclosure of Agilysys's trade secret and confidential information to Solutions II;

c. Awarding Agilysys its costs incurred in connection with this action; and

d. Awarding Agilysys such other and further relief as the Court deems just and proper.

**COUNT VIII**
**BREACH OF EMPLOYEE DUTY OF LOYALTY**
*(Against Hall)*

145. Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

146. During his employment with Agilysys, Hall owed Agilysys a duty of loyalty not to act contrary to Agilysys's interests, which included, but was not limited to, a duty to avoid competition with Agilysys and refrain from disclosing or using Agilysys's trade secrets, confidential, and proprietary information.

147. Hall breached his duty of loyalty by, *inter alia*:

a. Disclosing Agilysys's trade secret information to Solutions II and using it for his personal benefit during his employment with Agilysys;

b.  Wrongfully disclosing and misappropriating Agilysys's confidential, proprietary, and trade secret information for the benefit of Solutions II;

c.  Soliciting Agilysys's existing customers for the benefit of Solutions II;

d.  Soliciting Agilysys's potential target customers for the benefit of Solutions II; and

e.  Other illegal acts designed to unfairly compete with Agilysys.

148.  As a direct and proximate result of Hall's willful breach of his duty of loyalty to Agilysys, Agilysys has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by Hall, lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

149.  Based on the foregoing wrongful conduct by Hall, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Hall breached his duty of loyalty and Agilysys is entitled to disgorgement of any compensation paid to Hall as well as an award of punitive damages.

150.  Wherefore, Agilysys demands that the Court enter judgment against the Defendants:

a. Requiring Hall to pay compensatory and punitive damages to Agilysys in an amount to be fixed at trial, together with interest;

b. Requiring Hall to disgorge all wages, including commissions, paid by Agilysys after Hall's disclosure of Agilysys's trade secret and confidential information to Solutions II;

c. Awarding Agilysys its costs incurred in connection with this action; and

d. Awarding Agilysys such other and further relief as the Court deems just and proper.

## COUNT IX
## BREACH OF CONTRACT- NON-DISCLOSURE OBLIGATIONS
### *(Against Hall)*

151.    Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

152.    Pursuant to the Non-Disclosure Agreement between Agilysys and Hall, Hall was prohibited from disclosing or using Agilysys's confidential information, during or after his employment with Agilysys.

153.    The Non-Disclosure Agreement is valid and enforceable under Georgia law, which governs its interpretation and enforcement.

154.    Upon information and belief, in violation of the Non-Disclosure Agreement and Agilysys's Code of Conduct, Hall accessed and disclosed

Agilysys's trade secret information and proprietary information, including customer identification, customer purchasing history, pricing information, sales proposal information, and proposal templates to Solutions II.

155.  Hall's use and/or disclosure of Agilysys's trade secret, confidential, or proprietary information constitutes a breach of the Non-Disclosure Agreement.

156.  Hall anticipatorily agreed that breach or threatened breach of his confidentiality obligations entitles Agilysys to an injunction restraining his wrongful conduct.

157.  As a result of Hall's breach, Agilysys has suffered great and irreparable harm.  In addition, or in the alternative, Agilysys has suffered damages in an amount to be determined at trial.

158.  Agilysys has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

159.  Wherefore, Agilysys demands that the Court enter judgment against Hall:

   a.  Awarding Agilysys a temporary and permanent injunction to enforce the Non-Disclosure Agreement;

   b.  Awarding Agilysys a temporary and permanent injunction to enforce the Non-Disclosure Agreement;

c.  Awarding Agilysys damages in an amount to be determined at trial, together with interest;

d.  Awarding Agilysys such other and further relief as the Court deems just and proper.

**COUNT X**
**ORAL DEFAMATION/SLANDER**
*(Against Defendants)*

160.  Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

161.  Upon information and belief, Hall as an agent of Solutions II has stated and continues to state to Agilysys's existing customers and prospective customers that Agilysys is no longer in the business of selling IBM hardware or IBM solutions for such hardware.

162.  Hall's statements are untrue misrepresentations to Agilysys's existing and prospective customers.

163.  Hall as an agent of Solutions II has made these untrue statements regarding Agilysys's business for his own personal benefit and the benefit of Solutions to generate sales and revenue to Agilysys's detriment.

164.  Hall as an agent of Solutions II has made these untrue statements with the intention of injury Agilysys.

165. As a result of Hall's conduct, Agilysys has suffered great and irreparable harm. In addition, or in the alternative, Agilysys has suffered special damages in an amount to be determined at trial.

166. Agilysys has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

167. Wherefore, Agilysys demands that the Court enter judgment against Defendants:

    a. Awarding Agilysys a temporary and permanent injunction to prohibit Defendants' defamatory statements;

    b. Awarding Agilysys damages in an amount to be determined at trial, together with interest;

    c. Awarding Agilysys such other and further relief as the Court deems just and proper.

## COUNT XI
## CIVIL CONSPIRACY
### *(Against Defendants)*

168. Agilysys repeats and realleges paragraphs 1 through 60 above as if fully stated herein.

169. Defendants conspired to tortiously interfere with Agilysys's contractual and prospective business relations, to misappropriate Agilysys's trade

secret, confidential, and proprietary information, and to utilize and obtain information through unauthorized access to Agilysys's computer systems.

170. Solutions II hired Hall with full knowledge of his possession of Agilysys's trade secret, confidential, and proprietary information. Defendants used and disclosed Agilysys's trade secret, confidential, and proprietary information for the benefit of Solutions II and Hall in their procurement of business from the prospective and existing clients and customers of Agilysys through relationships that existed or were developed for the benefit of Agilysys while Hall was employed with Agilysys.

171. Defendants' willful and malicious acts and conduct prevented or will prevent prospective contracts between Agilysys and its prospective customers from occurring, proximately causing damage to Agilysys, not limited to a loss of revenue.

172. Defendants' willful and malicious acts and conduct prevented or will prevent renewal of contracts between Agilysys and its customers from occurring, proximately causing damage to Agilysys, not limited to a loss of revenue.

173. As a result of Defendants' conduct, Agilysys has suffered great and irreparable harm. In addition, or in the alternative, Agilysys has suffered special damages in an amount to be determined at trial.

174.  Agilysys has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

175.  Wherefore, Agilysys demands that the Court enter judgment against Hall:

    a.  Awarding Agilysys a temporary and permanent injunction to prohibit Defendants' conduct;

    b.  Awarding Agilysys damages in an amount to be determined at trial, together with interest;

    c.  Awarding Agilysys its costs incurred in connection with this action; and

    d.  Awarding Agilysys such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Agilysys hereby demands a trial by jury on all claims so triable.

Respectfully submitted, this 22nd day of September, 2016.

*/s/David W. Long-Daniels*
David W. Long-Daniels
Georgia Bar No. 141916
long-danielsd@gtlaw.com
Mellori E. Lumpkin
Georgia Bar No. 358937
lumpkinm@gtlaw.com
Jonathan M. Young

Georgia Bar No. 346606
youngjon@gtlaw.com
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia  30305
Phone:  (678) 553-2100
Fax:  (678) 553-2212

*Attorneys for Plaintiff Agilysys, Inc.*

CHI 67275346v8

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AGILYSYS, INC. | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEN HALL AND | ) | JURY TRIAL DEMANDED |
| SOLUTIONS II, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>VERIFICATION</u>

I hereby certify that I have read the foregoing Complaint and that the allegations therein are true, correct, and complete to the best of my knowledge, information, and belief.

Darren Student
Director of Sales – Gaming
Agilysys, Inc.

Sworn to and subscribed
before me this _18th_
day of September, 2016.

_____, NOTARY PUBLIC
NOTARY PUBLIC

My Commission Expires: _04/10/2019_



MICHAEL MEMLEY
COMM...2106305
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. April 10, 2019

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _ORANGE_

Subscribed and sworn to (or affirmed) before me on this _18th_ day of _SEPTEMBER_, 20_16_, by _DARREN STUDENT_ ,
_____
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal)                    Signature _Michael Memley, NOTARY PUBLIC_



MICHAEL MEMLEY
COMM...2106305
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. April 10, 2019
BCT3

LEGAL VERIFICATION