IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AGILYSYS, INC. | ) | |
| | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | 16-CV-03557-ELR |
| | ) | |
| v. | ) | |
| | ) | |
| KEN HALL | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT KEN HALL'S EMERGENCY MOTION FOR SANCTIONS[1]**

COMES NOW Defendant Ken Hall ("Defendant") and pursuant to Fed.R.Civ.P. Rule 26(g)(3), Rule 37(b)(2) and Rule 37(c) moves for sanctions against Plaintiff Agilysys, Inc. ("Plaintiff"), showing the Court as follows:

**SUMMARY**

Defendant has maintained from the outset of this case that Plaintiff is pursuing this matter not because of any alleged wrongdoing on the part of Defendant, but instead as a mechanism to gain competitive information from Solutions II and to force Defendant into restrictive covenants never bargained for during his

---

[1] The Motion is filed on an emergency basis because of the impending discovery deadline. Given the history of this case, the gravity of Plaintiff's discovery abuses and the impending discovery deadline, Defendant is deeply concerned that he will be irreparably prejudiced if expedited review is not granted.

employment.  Plaintiff's discovery conduct confirms this is the case.  This motion centers around Plaintiff's failure to produce "smoking gun", dispositive documents during discovery, Plaintiff's failure to supplement its Initial Disclosures and discovery responses with necessary witness information and Plaintiff's refusal to follow this Court's orders regarding the scope of discovery in this matter.

## **FACTS**

As a quick refresher, in September 2016, Plaintiff filed this lawsuit against Defendant and his new employer Solutions-II, Inc. alleging claims arising out of Defendant's employment relationship with Plaintiff and his subsequent employment relationship with Solutions-II. Motions to dismiss were filed by both Defendant and Solutions-II and the Court dismissed all claims against Solutions-II and several of the claims against Defendant. [Dk. 52]. The claims remaining against Defendant are (1) a Computer Fraud and Abuse Act claim ("CFAA"); (2) a misappropriation of trade secrets claim pled three different ways and (3) a claim for slander. The CFAA and trade secret misappropriation claims arise out of Defendant forwarding himself approximately 25 emails in the days leading up to his resignation from Plaintiff.  The slander claim arises out of Defendant allegedly telling customers that Plaintiff was no longer in the IBM hardware business.

Discovery has been extended several times in this case. [Dk. 71, 93, 141].

Most recently, on November 5, 2018, Magistrate Judge King extended discovery through February 28, 2019. [Dk.141]. Per Judge King's direction, the completion of discovery was supposed to proceed as follows: (1) Plaintiff was to supplement its discovery responses so as to specifically identify the trade secrets at issue, (2) once that occurred, Plaintiff was to conduct Defendant's deposition, (3) then fact witnesses were to be deposed by Defendant, and (4) finally Plaintiff's 30(b)(6) deposition was to occur. [Dk 141]. The impetus behind the four month extension was to allow the parties ample time to complete discovery. [Dk. 151, p. 42-44]. Plaintiff's obstructionist tactics have prevented that from occurring.

First, Plaintiff delayed more than a month after the Order was entered to supplement its discovery responses with the required information.  Plaintiff did not provide its supplemental responses until December 14, 2018. Then, Plaintiff delayed in scheduling the deposition of Defendant. After agreeing to the deposition occurring on January 15, 2019, Plaintiff requested to reset the deposition to January 22, 2019. Plaintiff has also been less than forthcoming with deposition dates for Defendant's desired witnesses.  As it stands now, Defendant was able to depose fact witnesses on January 25, January 29, and February 5. Defendant has additional depositions scheduled for February 19, 20 and 21. On February 1, 2019 Defendant requested dates for two additional witnesses identified by Plaintiff, but Plaintiff has refused to

provide dates for those witnesses. [February 13, 2019 Declaration of Layne Kamsler ("Kamsler Dec.") ex. 1]. Plaintiff is now also trying to delay Defendant's remaining scheduled depositions because of its inability to schedule its own depositions.

This case has a long, tortured history of discovery disputes. On several occasions, the Court has made it explicitly clear that the scope of discovery in this action is limited and that the parties are not allowed to play "hide the ball" with respect to discovery in this matter. [See Dk. 71; Dk. 151, p. 32-37; Excerpt for the Deposition of Ken Hall attached hereto as Exhibit A]. Despite the Court's clear directions, Plaintiff continues to violate the Court's discovery orders and has failed to comply with its discovery obligations. Plaintiff has withheld dispositive documents, has failed to supplement its initial disclosures and continues to seek discovery outside the limits prescribed by the Court.

I.   Plaintiff Has Withheld Documents That Support Defendant's Defenses

Defendant has learned that Plaintiff has withheld and/or failed to adequately search for documents requested by Defendant in discovery.  Specifically, Defendant is aware of at least four documents that Plaintiff failed to produce in discovery that are "smoking guns" for Defendant's case:

(1) The first document is an email dated April 26, 2016 with an attached commission statement sent by an employee of Plaintiff to Defendant four weeks after

Defendant resigned from Plaintiff that contains, among other information, (i) a list of all of Defendant's customers for the previous fiscal year; (ii) the total amount of bookings for each customer, (iii) total booking numbers by month and the gross profit generated on Defendant's bookings, (iv) the opportunity number and description of services provided to each customer, (v) the revenue recognized, costs and margin on each booking, (vi) the product, service and/or item sold to each customer, (vii) the month each booking was closed, and (viii) the location where the services or products were provided[2]. [February 13, 2019 Declaration of Ken Hall ("Hall Dec."), ¶ 3]. Despite this document be directly responsive to Defendant's discovery requests[3], it was never produced in discovery by Plaintiff.  It is directly relevant to and refutes Plaintiff's trade secret claims because it contains the exact same sort of information that Plaintiff contends Defendant misappropriated (i.e. – customer information, booking information, order information, pricing information, etc.). Importantly, nowhere in the email or attached commission statement does

---

[2] Defendant is happy to provide a copy of the commission statement to the Court upon request.  In native form, the commission statement is an excel spreadsheet with several different workbooks.  When converted to a PDF, it is over 200 pages long.

[3]  Defendant's RFPD 22.  Produce all communications sent, received or generated by any employee or consultant of Plaintiff from March 31, 2016 to present which (1) refers to Solutions II, Inc., or (2) refers to Ken Hall.

Defendant's RFPD 29. Produce all communications between Hall and any employee or consultant of Plaintiff from March 31, 2016 to present.

Plaintiff contend that the information is confidential and/or trade secret and Plaintiff knowingly sent the information to Defendant while he worked for a competitor. Plaintiff thus voluntarily sent to Defendant post-resignation the very information it now claims is trade secret.

(2) The second document is an email dated May 12, 2016 sent after Defendant resigned from Plaintiff from David Baldwin, an employee of Plaintiff, to Defendant at his Solutions-II email address providing Defendant with customer information, a customer agreement, pricing information and other information of Plaintiff and requesting Defendant's assistance with Plaintiff's customer. [Kamsler Dec., ex. 2]. This email was directly responsive to a discovery request, however it was never produced by Plaintiff during discovery. [See FN3]. Instead, Defendant was only provided a copy of the email at the deposition of Mr. Baldwin that occurred on February 5, 2019[4]. [Kamsler Dec. ¶3-4]. Mr. Baldwin produced the document under a subpoena document request. Like the commission spreadsheet, the document is directly relevant to and refutes Plaintiff's trade secret claims because it contains the

---

[4] At his deposition, Mr. Baldwin testified that he had never searched for responsive documents prior to receiving the subpoena for his deposition nor had anyone ever requested him to search for documents. He further testified that he was in regular, daily contact with Defendant while Defendant was employed by Plaintiff. [Kamsler Dec. ¶ 5] (A transcript of the deposition is not available yet, but Defendant will supplement with the transcript upon receipt). There is no reasonable explanation for why Mr. Baldwin's emails were not searched by Plaintiff in this litigation.

exact same type of information that Plaintiff contends Defendant misappropriated in this matter (i.e. – customer information, specific customer pricing and a customer agreement). Again, the withheld email shows that Plaintiff not only voluntarily provided this information to Defendant while he was employed by a competitor but also asked for his assistance with its customer.

(3) The third document is another an email dated May 10, 2016 from David Baldwin to Defendant at his Solutions-II email address again voluntarily providing Defendant with Plaintiff's "trade secrets" such as customer information, customer configurations and pricing information. [Kamsler Dec., ex. 3]. This email was also produced by Mr. Baldwin at his deposition. [Kamsler Dec., ¶ 3]. Defendant believes there are additional emails sent by Mr. Baldwin to Defendant at Solutions-II that have not been produced. These documents are directly responsive to Defendant's discovery requests to Plaintiff and should have been produced by Plaintiff during discovery.

(4) The final document that Defendant has knowledge of that is being withheld is an internal email sent between two employees of Plaintiff in July 2016 stating that one employee was resigning his employment from Plaintiff because Plaintiff's management (specifically Rob Jacks) informed him that Plaintiff was getting out of the hardware business. [Kamsler Dec., ex. 7]. Defendant only just learned of this

email on January 31, 2019 from the employee's attorney. [Kamsler Dec. ¶ 9]. This email was again directly responsive to Defendant's discovery requests but was not produced by Plaintiff during discovery in this matter. [See FN 3 (the email refers to Defendant)]. This email is directly relevant to and refutes Plaintiff's slander claim because Defendant has contended all along that his statement to customers that Plaintiff was getting out of the hardware business[5] was true at the time he made it in 2016. Defendant has deposed Mr. Jacks, but did not have this email available during the deposition. Defendant's ability to cross examine Mr. Jacks was prejudiced as a result.

These emails all go to the heart of Defendant's defenses in this case and should have been produced by Plaintiff during discovery. The failure to produce one of these documents might have been a mistake; the failure to produce all four is willful, intentional and done in bad faith. Plaintiff's failure to produce these documents raises serious concerns regarding what other documents and information are being withheld.  Defendant's counsel has attempted to address Plaintiff's failure to produce

---

[5] Defendant notes that Plaintiff has up to this point never provided evidence that Defendant made the allegedly slanderous statements set forth in the Amended Complaint.  Instead, the only evidence provided indicates that in 2016 Defendant told customers Plaintiff was "getting out of the hardware business". The issue of whether such statement, versus what is alleged in the Amended Complaint, even qualifies as defamatory will be addressed on summary judgment.

documents on several occasions. Most recently, during the deposition of Mr. Baldwin on February 5, 2019, after Mr. Baldwin provided the documents that should have been produced by Plaintiff in discovery, Defendant's counsel asked Plaintiff's counsel why the documents had not been previously produced and requested a list of the custodians searched by Plaintiff during discovery in this matter. [Kamsler Dec., ¶ 6]. Plaintiff's counsel stated he would check and let her know. [Kamsler Dec., ¶ 6]. On February 7, 2019, Defendant's counsel sent a follow-up email again requesting the custodians that had been searched. [Kamsler Dec., ex. 4]. Plaintiff's counsel responded on February 8, 2019 and said he was still looking into the matter. [Kamsler Dec., ex. 5]. Defendant's counsel responded that same day and asked for the information by close of business on February 8. [Kamsler Dec., ex. 6]. No response has been received to date. [Kamsler Dec., ¶ 8].

What makes Plaintiff's failure to produce these documents even more egregious is Plaintiff's repeated representations to both Defendant's counsel and the Court that nothing was being withheld in discovery. Defendant's counsel made it known to Plaintiff's counsel almost a year ago that she thought documents were being withheld or that an adequate search was not being made by Plaintiff in discovery. [Kamsler Dec., ¶ 11]. Plaintiff's counsel assured Defendant's counsel that a search of all of Plaintiff's emails was made. [Kamsler Dec., ¶ 11]. Unsatisfied with

Plaintiff's assurance, Defendant raised the issue in the Joint Discovery Statement filed with the Court on June 13, 2018. [Dk. 113]. Plaintiff's counsel again represented that nothing was being withheld and stated so in its discovery responses. Either that statement is not true or Plaintiff has failed to adequately search for documents, both of which are sanctionable.

II.   Plaintiff Failed To Supplement Its Initial Disclosures And Discovery Responses

Plaintiff identified two witnesses, Yolanda Brown and Joshua Elder, in its initial disclosures and discovery responses as damages witnesses with respect to the CFAA claim. [See Except of Plaintiff's Initial Disclosures attached hereto as Exhibit B]. In Plaintiff's discovery responses last supplemented on December 14, 2018, Plaintiff's states that both witnesses are employees of Plaintiff. [See Excerpt of Discovery Responses attached hereto as Exhibit C]. In Plaintiff's Initial Disclosures last supplemented on November 2, 2018, Plaintiff states the witnesses can only be contacted through Plaintiff's counsel.  On February 1, 2019, Defendant's counsel requested dates to depose both witnesses. [Kamsler Dec., ex. 1]. Defendant's counsel followed-up on February 5, 2019, and Plaintiff's counsel stated he was still trying to arrange dates and would get back to Defendant's counsel. [Kamsler Dec., ¶ 1]. On February 7, 2019, Defendant's counsel emailed Plaintiff's counsel again asking for dates.  [Kamsler Dec., ex. 4]. Plaintiff's counsel replied on February 8 stating the

individuals were no longer employed by Plaintiff. [Kamsler Dec., ex. 5]. Defendant's counsel immediately responded and asked for their contact information by 3:00 p.m. on that same day. [Kamsler Dec., ex. 6]. To date, Plaintiff's counsel has not responded. [Kamsler Dec., ¶ 12].

A quick internet search indicates that one of the employees has not been employed by Plaintiff since July 2018 and the other December 2018. [Kamsler Dec., ¶ 13]. Despite this, Plaintiff's discovery responses continue to indicate that Plaintiff controls these witnesses and Plaintiff has refused to provide contact information for the witnesses in compliance with its discovery obligations. Plaintiff is playing games with Defendant and this Court and subverting the path to the truth. Defendant's ability to depose these witnesses in the time left in discovery is prejudiced by Plaintiff's failure to comply with its discovery obligations.

III.    Plaintiff Refuses To Abide By The Court's Discovery Orders

On January 11, 2018, the Court first instructed the parties regarding the scope of discovery in this matter. [Dk. 71]  In its Order, the Court limited the scope of discovery specifically to the remaining claims in the litigation and found Plaintiff's initial approach to discovery "troubling" given the history of the case. [Dk. 71]. Despite the Court's admonishment, Plaintiff continued to pursue information outside of the permissible scope of discovery. In July 2017, Plaintiff served anti-competitive

discovery requests on Defendant seeking information regarding anything and everything that Defendant and Solutions-II were doing. [See Dk. 113-7 and 113-8]. Defendant resisted these discovery requests which, among other disputes, ultimately led to the parties filing a Consolidated Joint Discovery Statement on June 12, 2018. [Dk. 113]. Magistrate Judge King conducted a discovery conference on November 5, 2018 and Plaintiff's overbroad discovery requests were discussed at the conference. [Dk. 151]. At the conference, Judge King stated "once [Plaintiff] identified the specific trade secrets, [Plaintiff's] discovery request ought to be linked to what [Defendant's] done in connection with those." [Dk. 151, p. 27].  Judge King then went on to examine some of the specific discovery requests propounded by Plaintiff and admonished Plaintiff for their overbreadth and Plaintiff's "effortless" attempt to propound discovery:

> *Court: "And, for example, your request number 12 that's attachment to Exhibit 6[6]. All documents relating to work Solutions II has obtained or seeks to obtain from companies that Agilysys has done business with or sought business from in the last 12 months. **Are you kidding? What**? ... It has nothing to do with Mr. Hall, allegations against Mr. Hall or his conduct. I won't require a response to that."* [Dk. 151, p. 34](emphasis

---

[6] Defendant believes Judge King was actually referring to Exhibit 8 [Dk. 113-8].

added).

*Court:* "For example, we're still in document Exhibit 7[7], but this is Mr. Hall's third supplemental responses. Number 1, all documents identified in or relating to any communication described in plaintiff's complaint. Number 2, all documents related to Agilysys's employees, consultants, current, former or direct employees. **Please. Really? I mean, I'm serious. Way too vague. You know, I don't see any connection.** And again, number 4. It's all documents -- you know, it's -- these have just got to be -- you know, all of these have -- all of these in this section have these issues. They are all communications, all people. Number 8. All documents relating to your activities on behalf of Solutions II. **Really? Are you kidding me?** I mean, again... All documents relating to your employment with Solutions II? All documents relating to communications between you and any current or former employee during your employment with Solutions II? The -- I just -- and I can definitely tell you for numbers 14 and 15, you're not going to get -- that I'm not going to order a forensic image of all his electronic devices. So that's not happening. And this may not be the

---

[7] Defendant believes Judge King was still referring to Exhibit 8 [Dk. 113-8].

*case, **<u>but these appear to be just rather effortless attempts to propound</u>***

***<u>discovery</u>.*** [Dk. 151, p. 36-37](emphasis added).

The most recent instance of this Court providing direction to Plaintiff regarding the scope of discovery occurred during Mr. Hall's deposition on January 22, 2019. Again, the Court instructed Plaintiff that the scope of discovery was limited to the emails Defendant forwarded to himself and what he may have stated to customers about Plaintiff's business. The Court specifically instructed Plaintiff that it could not inquire into what Defendant was doing on behalf of Solutions II [See Exhibit A].

Despite the Court's explicit direction, Plaintiff inexplicably served new discovery requests on Defendant on that same day (January 22) requesting the exact type of information the Court made clear on multiple occasions Defendant is not required to produce. [See Plaintiff's Revised Requests for Production of Documents to Defendant Ken Hall and Plaintiff's Revised Interrogatories to Defendant Ken Hall attached hereto as Exhibit D].  As just a few examples, Plaintiff's most recent requests include:

> *RFPD 5.    All documents from October 31, 2015 to the present relating to your efforts on behalf of Solutions II to solicit the business of current or former Agilsysys customers or the employment of current*

*or former Agilysys employees or consultants.*

*RFPD 8.    All documents relating to work Solutions II has obtained or seeks to obtain from companies that you called on in the course of your employment with Agilysys.*

*Interr. 10.    Identify each and every current, former or prospective customer, supplier, business partner, or vendor of Agilysys whom you have contacted or communicated with since your employment with Agilysys ended.*

*Interr. 11.    Describe every instance in which you and a current or former Agilysys employee discussed employment or potential employment with Solutions II whether yours or someone else's- including every instance in which you have attempted to recruit an employee or independent contractor of Agilysys to work with or for Solutions II.*

Plaintiff's complete disregard for the Court's orders regarding discovery in this matter is further shown by the subpoena issued by Plaintiff to Todd Bowling, the CEO of Solutions-II. [See Subpoena attached hereto as Exhibit E]. In the Subpoena issued on February 11, 2019, Plaintiff requests Mr. Bowling to produce, among other documents, "Any and all documents evidencing [Mr. Bowling's]

involvement in the recruitment and/or solicitation of current or former Agilysys customers, employees, or consultants from October 31, 2015 to the present, including, but not limited to, Robert LaPorte and Pamerla Eversole". The audacity of Plaintiff to request such information given the Court's repeated admonishments to Plaintiff regarding its attempts to create claims against these non-parties is astounding. [See e.g. Dk. 71]. The Court has spoken loudly to Plaintiff and the Plaintiff is ignoring the Court.

Defendant has attempted to address these issues with Plaintiff ad nauseam over the past two and half years to no avail. At this stage, Plaintiff's repeated violations of the Court's orders and the discovery rules cease to be innocent or coincidental and clearly demonstrate willful and sanctionable conduct on the part of Plaintiff. This lawsuit has been pursued for improper purposes and whether Plaintiff's conduct rises to the level of perpetrating a fraud is for the Court to decide.

## ARGUMENT AND CITATION TO AUTHORITY

I.      Discovery Sanctions Are Necessary And Appropriate

Sanctions should be imposed against Plaintiff for its failure to produce documents and its representations and conduct during the discovery process. Such sanctions are appropriate under Federal Rules of Civil Procedure 26(g) and 37 because Plaintiff violated this Court's discovery Orders, failed to supplement its

discovery disclosures and falsely certified that it was not withholding documents without making a reasonable inquiry.

The Federal Rules of Civil Procedure are designed to ensure that parties act reasonably during discovery. Rule 26(g)(1) requires an attorney of record to sign every discovery request, response or objection. By signing, an attorney certifies that to the best of his knowledge, information, and belief formed after a reasonable inquiry that a discovery request, response or objection is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action. Fed.R.Civ.P. 26(g).  The comments to subsection Rule 26(g)(1) clarify that the rule broadly "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed.R.Civ.P. 26(g) advisory committee's note. "This broad duty is satisfied when an attorney makes 'a reasonable inquiry into the factual basis of his response, request, or objection'. Specifically, the attorney's investigation and conclusions drawn

therefrom must be reasonable under the circumstances." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1350 (N.D. Ga. 2012), modified sub nom. *In re Delta/Airtran Baggage Fee Antitrust Litig.*, No. CV 1:09-MD-2089-TCB, 2012 WL 12952328 (N.D. Ga. July 18, 2012).

"The federal discovery rules place an affirmative duty upon a party and its counsel to produce not only responsive materials of which they are aware, but also those which they reasonably ought to have been aware." S*tallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (M.D. Ala. 2001). When a party fails to conduct a reasonable search for responsive documents, its certification under Rule 26 that its discovery responses are correct and complete is false. *In re Delta* 846 F.Supp.2d at 1350. Rule 26(g) requires sanctions where a party fails to make a reasonable inquiry before certifying its discovery responses absent "substantial justification." Fed.R.Civ.P. 26(g)(3).

Similarly, Rule 37(b)(2) provides that sanctions may be imposed for a party's failure to comply with a court's discovery orders and Rule 37(c)(1) provides for sanctions if a party fails to provide information or identify witnesses as required by Rule 26(a) or (e), unless the failure is substantially justified. Fed.R.Civ.P.37(b)(2), (c)(l).  Rule 26(a) and (e), in turn, require a party to provide the name, address and telephone number for witnesses and require a party to supplement that information

in a timely manner. Fed.R.Civ.P. 26.

Under these well-established standards, Plaintiff should be sanctioned. Plaintiff failed to produce responsive, dispositive documents despite its repeated representations to the Court and to Defendant that nothing was being withheld. Even if Plaintiff is not intentionally withholding the documents, Rule 26(g) does not forgive a party's failure to timely conduct an adequate and complete search for responsive documents. *In Re Delta*, 846 F.Supp.2d at 1357. At this stage in the litigation, given the information withheld and Plaintiff's refusal to disclose the custodians searched, it is clear Plaintiff is either intentionally withholding documents or did not conduct an "adequate and complete" search. Plaintiff's failure to produce the documents addressed herein and other potentially relevant information substantially prejudices Defendant's ability to defend the case.

Plaintiff also failed to supplement its initial disclosures with current employment information for its witnesses and has refused to provide contact information for the witnesses is violation of Rule 26(a) and (e). This conduct mandates sanctions under Rule 26. Finally, Plaintiff has failed to follow repeated discovery orders of this court limiting the scope of discovery. These failures have caused Defendant to incur unnecessary expense, have grossly expanded the proceedings and have prejudiced Defendant's ability to defend himself.

Plaintiff cannot demonstrate that its actions are substantially justified because it failed to take reasonable steps to comply with its discovery obligations. A party's discovery conduct is only substantially justified "if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Cant 'I Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993)(internal citation omitted). Reasonable minds could not differ that the above documents should have been produced in discovery and that Plaintiff should have provided contact information for its witnesses. In fact, courts routinely impose sanctions under similar facts to this case. *See Metro. Opera Assoc., Inc. v. Local 100, Hotel Employees*, 212 F.R.D. 178, 221-22 (S.D.N.Y 2003) (imposing Rule 26(g) sanctions where plaintiff repeatedly questioned the adequacy of defendant's production, and defendant's counsel repeatedly responded that nothing was being withheld despite having failed to conduct a reasonable investigation); *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249 (S.D. Fla. 2007); *In re Delta*, 846 F. Supp. 2d 1335; *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993).

II.     Plaintiff's Amended Complaint Should Be Dismissed

Under both Rule 26(g) and Rule 37, a court is required to impose sanctions on a party that violates its discovery obligations. "In Rule 37 cases, intentional

behavior, actions taken in bad faith, or grossly negligent behavior justify severe disciplinary measures. *Metro*, 212 F.R.D. at 219. Rule 37(b)(2) provides the following sanctions are available to the Court: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Fed.R.Civ.P. 37(b)(2).

Rule 37(c)(1) provides that if a party fails to provide the required information, that the party should not be allowed to use the information or witness on a motion or trial.  In addition, Rule 37(c)(1) also allows for payment of reasonable expenses and the imposition of other appropriate sanctions including those contemplated by Rule 37(b)(2).

Under Rule 26(g)(3), the court is given discretion to impose an "appropriate sanction", including the payment of reasonable expenses.

In the matter at hand, Defendant requests that Plaintiff's Amended Complaint be dismissed. Rule 37(b)(2) gives a district court broad discretion to fashion an appropriate sanction. *See Malautea*, 987 F.2d at 1542. While the sanction of dismissal requires a finding of willful or bad faith failure to obey a discovery order, there is ample evidence of such conduct in this case. Plaintiff has repeatedly and brazenly defied this Court's orders regarding the scope of discovery.  On no less than three occasions, the Court has instructed Plaintiff that the discovery scope is limited. Plaintiff has ignored these orders and continues to propound discovery requests outside the limits of discovery. Further, the Court has previously warned the parties that to extent they failed to fully respond to an opposing party's discovery requests, the Court had discretion to impose serious sanctions. [Dk. 71].

The gravity of the documents withheld and/or Plaintiff's failure to search for documents also supports the sanction of dismissal.  "Several federal courts have held that the need for sanctions is heightened when the misconduct relates to the pivotal or "linchpin" issue in the case." *Qantum*, 473 F. Supp. 2d at 1269. And a party's failure to produce pivotal evidence militates heavily in favor of the severe sanction of dismissal. *Id.* at 1278.

Plaintiff's refusal to follow discovery orders, coupled with its failure to produce dispositive documents and its failure to provide contact information for its

damages witness, makes the sanction of dismissal just and appropriate in this matter. In addition, Plaintiff should be ordered to reimburse Defendant for the fees and expenses incurred in bringing this motion.  *See* Fed.R.Civ.P 26 and 37.

III.    <u>In The Alternative, Plaintiff Should Be Prohibited From Opposing Certain Defenses And Offering Certain Witnesses, Discovery Should Be Extended For Limited Purposes, And Plaintiff Should Be Ordered To Pay Expenses</u>

If the Court does not enter the ultimate sanction of dismissing this action, Defendant requests that (1) Plaintiff be prohibited from opposing certain defenses of Defendant as set forth below, (2) Plaintiff be prohibited from using the two CFAA damages witnesses or any evidence derived from them, (3) that discovery be extended for the limited purpose of Plaintiff undertaking a complete search and production of responsive documents and to allow time for Defendant to conduct additional depositions based on the production or to reopen previous depositions as appropriate, and (4) Plaintiff be ordered to pay the expenses incurred in bringing this motion and any expenses incurred in the extended discovery period.

Specifically, Plaintiff should be prohibited from opposing Defendant's defenses related to the documents Defendant currently knows were withheld. As that relates to the email with the commission spreadsheet and the emails from Mr. Baldwin, Plaintiff should be prohibited from opposing Defendant's defense that Plaintiff knowingly, voluntarily and without restriction provided what it contends is

trade secret information to a competitor. As it relates to the resignation email sent in July 2016, Plaintiff should be prohibited from opposing Defendant's defense that Plaintiff's management informed employees in early 2016 that Plaintiff was getting out of the hardware business.

Plaintiff should also be prohibited from using the two CFAA damages witnesses for which it refuses to provide contact information, including a prohibition of using any information derived from them or connected to them. Rule 37(c)(1) specifically contemplates where a party fails to provide the information required by Rule 26 (including witness contact information), it should be prohibited from using on motion or at trial any witness or information not disclosed. Plaintiff had ample time during discovery to provide accurate information regarding the witnesses. Its failure to do so with only two weeks left in the third extended discovery period is unjustified and prejudices Defendant's ability to defend himself. The requested sanction is thus warranted.

WHEREFORE, for the reasons set forth herein, Defendant Ken Hall requests that sanctions be imposed against Plaintiff.

This 13th day of February, 2019.

/s/ Layne M. Kamsler
John D. Hipes
HIPES & BELLE ISLE, LLC                 Georgia Bar No.  100585

178 S. Main Street, Suite 250

Alpharetta, GA 30009

(770) 664-6699

jhipes@hbilawfirm.com

Layne M. Kamsler

Georgia Bar No. 415327

lkamsler@hbilawfirm.com

Attorneys for Ken Hall

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia.  Counsel hereby states that the foregoing document has been typed in Times New Roman 14 count.

/s/Layne M. Kamsler

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AGILYSYS, INC. | ) | |
| | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | 16-CV-03557-ELR |
| | ) | |
| v. | ) | |
| | ) | |
| KEN HALL | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **EMERGENCY**

**MOTION FOR SANCTIONS** has been served by using the CM/ECF system which

will automatically send e-mail notification of such filing to the following attorneys of

record, addressed as follows:

> David W. Long-Daniels
> Brett Janich
> Greenberg Traurig, LLP
> Terminus 200
> 3333 Piedmont Rd, NE, Suite 2500
> Atlanta, GA 30305

This 13th day of February, 2019.

*/s/ Layne M. Kamsler*

- 26 -