<div align="center">

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

</div>

| | |
|---|---|
| **AGILYSYS, INC.** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION FILE NO.** |
| ) | **1:16-cv-03557-ELR-JFK** |
| **KEN HALL** ) | |
| ) | |
| Defendant. ) | |

<u>**PLAINTIFF AGILYSYS, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION FOR SANCTIONS**</u>

Plaintiff Agilysys, Inc. ("Agilysys") hereby responds in opposition to Defendant Ken Hall's ("Defendant") Supplemental Motion for Sanctions ("Defendant's Supplemental Motion") [D.E. 166], showing the Court as follows:

**I.    Introduction**

Throughout this matter, defense counsel's approach to discovery has been completely uncooperative, highly confrontational, and, in some instances, borderline abusive.  Indeed, instead of relying on the reasonable procedures for resolving discovery disputes that are provided for by the Federal Rules of Civil Procedure—*e.g.*, meet and confers, motions to compel, motions for protective orders—defense counsel has repeatedly abused the Rules' most serious mechanism—the motion for sanctions—resulting in a spate of improper and

baseless filings by Defendant. Time and again, rather than confer and give the parties an opportunity to resolve their issues (including, in this instance, by delaying the 30(b)(6) deposition or providing for additional time to review any allegedly new evidence), defense counsel has unilaterally pursued the most drastic route, filing numerous motions for sanctions. Moreover, in order to sustain these meritless filings, defense counsel has misconstrued, misrepresented, and mischaracterized the behavior of Agilysys and its counsel. As demonstrated in more detail below, Defendant's Supplemental Motion is just the latest example of defense counsel's abusive approach to discovery, and, as such, the Court should take the opportunity presented by the Motion to reject defense counsel's approach and restore a measure of comity and collegiality to a discovery process that has otherwise been poisoned by defense counsel's scorched-earth tactics.

## II.  Defense Counsel's Abusive Discovery Tactics

Of course, defense counsel cannot be faulted for mounting a vigorous defense of Defendant, given the ethical and professional obligation to serve as a zealous advocate for one's client. Furthermore, given Defendant's repeated admission at deposition that he stole Agilysys's trade secrets in order to aid him in his new, competing employment at Solutions II, there is little doubt that Defendant

is in desperate need of a vigorous defense if he has any hope of salvaging his professional reputation, let alone this case.

Far too often, however, defense counsel's vigor has manifested itself as abuse, leading to a breakdown of the discovery process. For instance, prior to Defendant's deposition, Agilysys's lead counsel—David Long-Daniels—informed Defendant's primary counsel—Layne Kamsler—that he was experiencing serious spinal spasms in connection with two, recent cervical spinal surgeries[1] and requested the ability to finish Defendant's deposition a few days later when the parties were already scheduled to meet for another deposition, in the event that the pain from the spasms prevented him completing Defendant's deposition in a single day. However, despite encouragement from Judge Ross, Ms. Kamsler refused to grant Mr. Long-Daniels the professional courtesy of a medically-related suspension of Defendant's deposition, and, instead, forced Mr. Long-Daniels to disregard his doctor's express orders and finish the deposition in a single, excruciatingly-painful day. *See* **Exhibit A**, Hall Depo. Tr. at 187:6-20 (Ms. Kamsler: "Well, here's what I'll tell you. If you want to address it with the Court, if they call us back, let's address it now. Because I'm not going to consent to do it on a second day." Mr. Long Daniels: "Why is that?" Ms. Kamsler: "Well,

---

[1] Plaintiff's counsel has been under the care of his physicians at the Mayo Clinic in Rochester, Minnesota since October 2018.

because—" Mr. Long Daniels: "You want me to tell the judge that I had two back surgeries – hear me out. I had two back surgeries. You want me to continue the deposition beyond what the doctor said? Is that what you really want, to get into an argument with the judge, in front of –" Ms. Kamsler: "I don't want to get into any argument with you. I'm just telling you my position."), 189:3-11 (Mr. Long-Daniels: "I mean, this is an opportunity for us – I think Judge King's point was to do what you're supposed to do as lawyers. We are trying to do that. I would extend to any lawyer the courtesy I have just asked. I have never, ever denied that courtesy to any lawyer." Ms. Kamsler: "You're asking for a courtesy of taking a second day when the federal rules provide you with one day."), 294:16-296:3 (The Court: "My understanding is that this will continue on Friday or through Friday? I'm not sure." Mr. Long-Daniels: "Well, Your Honor, what I asked for, I just had two back surgeries. The last one less than three weeks ago at the Mayo Clinic. So today I was having some spinal spasms." The Court: "Ok." Mr. Long-Daniels: "And I asked out of courtesy that if I can't finish today due to the pain and this spasm, can we do – can we finish it on Friday morning." The Court: "Okay." Mr. Long-Daniels: "And I thought we had an agreement on that, but Layne says we did not. I'm simply asking for a professional courtesy having, you know, got up out of my bed to come here in pain to have the option if – you know, my doctor had

4

suggested that I not be here – that I have a chance to finish this deposition on Friday morning if I don't finish it today." The Court: "All right. Well, I certainly hope and trust that everyone will be as professional as possible and take into account all that . . . I certainly hope that everyone there understands that but for the grace of God any of us could have any situation at any time, so please work with each other the best that you can. I mean, it's been a long process and let's not let it break down at this point."), & 297:12-14 (Mr. Long Daniels: "So we're on for Friday or not?" Ms. Kamsler: "I'm not consenting to Friday.").

Defendant's Supplemental Motion is part and parcel of the same abusive tactics. Indeed, upon receipt Agilysys's damages disclosures, defense counsel never suggested that the disclosures were tardy, requested additional time to review the disclosures, or asked for an extension of Agilysys's 30(b)(6) deposition with respect to the issue of damages. Rather, defense counsel improperly took a full seven hours of deposition testimony from Agilysys's 30(b)(6) representative and then announced for the first time that she was "suspending" the 30(b)(6) deposition due to the timing of Agilysys's damages disclosures. Moreover, instead of promptly filing a motion for protective order—as FRCP 30(d)(3)(A) requires following the suspension of a deposition—defense counsel waited two-and-a-half weeks before filing Defendant's Supplemental Motion. *See, e.g.*, *Ferguson v.*

*North Broward Hospital District*, No. 10-61606-CIV, 2011 WL 1496771, at *1 (S.D. Fla. April 19, 2011) ("Although the Rule does not set forth a specific time for filing a motion for protective order . . . courts have noted that such motions must be filed 'immediately' or 'promptly' after the suspension of the deposition."). Given defense counsel's exaggerated delay in bringing the matter to the Court's attention, use of an improper procedural device (*i.e.*, a motion for sanctions, rather than a motion for protective order), and failure to conduct a meet and confer prior to filing Defendant's Supplemental Motion,[2] it is abundantly clear that Defendant's Supplemental Motion is not the product of a legitimate discovery complaint, but, instead, is a naked ploy to inappropriately impugn the reputation of Agilysys's counsel and improperly exclude Agilysys's damages disclosures through an abuse of the discovery process. As such, the Court should not hesitate to deny Defendant's Supplemental Motion.

**III. Defense Counsel's Misleading Characterization of the Underlying Facts**

Moreover, the Court should further reject Defendant's Supplemental Motion based on the blatantly misleading statements made by defense counsel therein.

---

[2] Agilysys fully renews the meet-and-confer argument it previously raised in its Response in Opposition to Defendant's Emergency Motion for Sanctions (*see* D.E. 157 at 1-3), as Defendant's Supplemental Motion is likewise due to be denied in light of defense counsel's failure to meet and confer with Agilysys's counsel per the requirements of FRCP 37(a)(1) and Judge Ross's standing order on discovery disputes.

Indeed, the narrative premise of Defendant's Supplemental Motion is that defense counsel was deluged with an avalanche of damages data from Agilysys on the eve of Agilysys's 30(b)(6), robbing defense counsel of the ability to sift through the unexplained data and prejudicing defense counsel's ability to effectively question Agilysys's 30(b)(6) representative about the data. *See, e.g.*, D.E. 166 at 4 ("Plaintiff provided no explanation for the information contained in the workbook. Plaintiff did not . . . provide any calculation or computation to go with the workbook."), 7 ("Providing an excel workbook with thousands of entries one day prior to the 30(b)(6) deposition at the start of another deposition is not sufficiently in advance to all Defendant to prepare."), & 10 ("Simply providing excel workbooks that contain thousands of entries without explanation does not satisfy Plaintiff's discovery obligations."). This narrative, however, could not be further from the truth.

In reality, Agilysys's damages disclosure contained a succinct summary page—which neatly detailed Agilysys's damages computation—in full satisfaction of Agilysys's disclosure obligations. See **Exhibit B**, Summary Page of Agilysys's February 21, 2019 Damages Disclosure; *see also* Defendant's Supplemental Motion, D.E. 166 at 10 (quoting *Shock v. Aerospace Integration Corp.*, No. 08-cv-304, 2009 WL 595923, at *4 (N.D. Fla., March 6, 2009)) ("[B]y its very terms

Rule 26(a) requires more than providing – without any explanation – undifferentiated financial statements; *it requires a "computation," supported by documents*.") (emphasis added).  Furthermore, Agilysys's 30(b)(6) representative was well prepared by Agilysys's counsel to explain Agilysys's damages disclosure to defense counsel at deposition, as well as to articulate Agilysys's straightforward damages theories, namely, that the damages suffered by Agilysys as a result of Defendant's undisputed misappropriation of its trade secrets can be alternatively measured by (1) the drop in Agilysy's IBM hardware sales following Defendant's misappropriation, *i.e.*, more than $35M over the three-year period that followed Defendant's misappropriation; and/or (2) the value of Agilysys's IBM hardware business line prior to Defendant's misappropriation, *i.e.*, approximately $7.5M, conservatively calculated using the industry-accepted valuation method of three years' worth of the business line's EBITA (Earnings Before Interest, Taxes, and Amortization).

Likewise, Defendant's Supplemental Motion misconstrues the timing of Agilysys's damages disclosure, accusing Agilysys of "engag[ing] in unjust gamesmanship by withholding information relating to a critical element of its claims . . ." D.E. 166 at 8.  To the contrary, Agilysys produced its damages disclosure as soon as reasonably possible; indeed, defense counsel's extreme


framing of the timing of Agilysys's damages disclosure fails to account for (1) the voluminous nature of the damages data disclosed by Agilysys, which required significant time and effort to compile; and (2) the ongoing development of new information at numerous fact witness depositions in the days and weeks leading up to Agilysys's damages disclosure, all of which Agilysys properly sought to incorporate into its disclosure to ensure that it was completely up-to-date at the time of production.

In other words, contrary to defense counsel's suggestions otherwise, Agilysys and its counsel made a significant effort to clearly and comprehensively inform Defendant and his counsel of Agilysys's damages theories and calculations, and, as such, the Court should deny Defendant's Supplemental Motion and direct defense counsel to adhere to the ideals of professional courtesy embodied in the Federal Rules of Civil Procedure and this Honorable Court's Standards for Practicing Law.

## IV. Conclusion

For the reasons articulated above, the Court should deny Defendant's Supplemental Motion for Sanctions.[3]

---

[3] For the same reasons it previously articulated in its Response in Opposition to Defendant's Emergency Motion for Sanctions (D.E. 157 at 6-7), Agilysys

Respectfully submitted this 18th day of March, 2019.

/s/ David W. Long-Daniels
David W. Long-Daniels
Georgia Bar No. 141916
Long-DanielsD@gtlaw.com
Brett A. Janich
Georgia Bar No. 552896
janichb@gtlaw.com

GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, NDGa., I certify that this document has been prepared in Times New Roman font and a point size of 14 in accordance with and as approved by the Court in LR 5.1, NDGa.

Respectfully submitted, this 18th day of March, 2019.

/s/ David W. Long-Daniels

Counsel for Plaintiff

---

respectfully requests that the Court grant Agilysys the attorneys' fees and costs it has incurred in responding to Defendant's Supplemental Motion.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| AGILYSYS, INC., | ) | |
| | ) | CIVIL ACTION FILE NO. |
| | ) | 1:16 03557-ELR |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEN HALL | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have filed a true and correct copy of the foregoing document via the Court's ECF system upon the following counsel of record:

John D. Hipes
Layne M. Kamsler
HIPES & BELL ISLE, LLC
178 S. Main Street, Suite 250
Alpharetta, GA 30009

This 18th day of March, 2019.

*/s/ David W. Long-Daniels*

Counsel for Plaintiff